FILED
2019 Sep-06 AM 10:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **ERIC K. WILLIAMS, and all those similarly situated,** | }<br>}<br>} |
| **Plaintiffs,** | }<br>} |
| v. | } **Case No.: 5:15-cv-01434-MHH**<br>}<br>} |
| **JOHN G. SCHANCK,** | }<br>}<br>} |
| **Defendant.** | } |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on a motion to dismiss. Plaintiff Eric K. Williams initially sued Stellar Recovery, Inc., seeking damages under the Telephone Consumer Protection Act and Alabama law. (Doc. 1, p. 5). During a telephone conference in this matter, Stellar's founder and owner, John G. Schanck, indicated that Stellar Recovery had dissolved and did not intend to participate in this lawsuit. (Doc. 46). The Court permitted Mr. Williams to amend his complaint to add Mr. Schanck as a defendant. (Docs. 49-1, 50). In his amended complaint, Mr. Williams contends that Stellar acted "on behalf of Defendant Schanck" and that Mr. Schanck is liable under the TCPA and Alabama law. (Doc. 49-1).

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, Mr. Schanck asks the Court to dismiss the claims against him. (Doc. 60).

1

For the reasons discussed below, the Court grants in part and denies in part Mr. Schanck's motion to dismiss.

## I. STANDARDS OF REVIEW

### A. Rule 12(b)(2) Standard

The United States Constitution limits the extent to which a district court may exercise jurisdiction over a non-resident defendant. Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may assert lack of personal jurisdiction as a defense to a claim and may ask a court to dismiss the claim against him on that basis. FED. R. CIV. P. 12(b)(2).

A plaintiff who sues a non-resident defendant "'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of [personal] jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). A district court must accept as true the jurisdictional allegations in the plaintiff's complaint, unless "a defendant challenges personal jurisdiction 'by submitting affidavit evidence in support of its position.'" *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1350 (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (internal quotation marks omitted)). If that happens, then the burden shifts back to the plaintiff to provide evidence supporting the district court's exercise of jurisdiction over the defendant "unless the defendant's affidavits contain only

conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). When the parties present conflicting evidence, a district court "must construe all reasonable inferences in favor of the plaintiff." *Stubbs*, 447 F.3d at 1360.

### B. Rule 12(b)(6) Standard

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, No. 1:10-cv-254, 2012 WL 1028176, at *1 (M.D. Ala. Mar. 26, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement needs only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

"Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012). "Where those two requirements are met… the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Keene*, 477 Fed. Appx. at 583.

## II. PROCEDURAL HISTORY

Mr. Williams initiated this suit against Stellar Recovery, Inc. (Doc. 1). Mr. Williams asserts that he is a resident of Madison County, Alabama and that "a substantial portion of the facts and circumstances that give rise to the cause of action occurred in this District." (Doc. 49-1, ¶¶ 1, 5). Mr. Williams alleges that he received predictive, pre-recorded, and auto-dialer collection calls on his cell phone from Stellar. (Doc. 1, pp. 5-11; Doc. 49-1, ¶¶ 9, 21-23, 28-30). Mr. Williams asserts that he did not provide his cell number to Dish Network, the company for which Stellar made collection calls, nor did he give Dish or Stellar express consent to call his cell number. (Doc. 49-1, ¶¶ 10-13, 36-37). Mr. Williams adds that he instructed Stellar not to call his cell number using an auto-dialer. (Doc. 49-1, ¶ 32). Stellar answered Mr. Williams's complaint and admitted that "it does business in Alabama." (Doc.

8, p. 1, ¶ 2). In its affirmative defenses, Stellar did not challenge personal jurisdiction. (Doc. 8, pp. 11-12).

After Mr. Schanck dissolved Stellar, Mr. Schanck informed the Court that Stellar would not participate in this litigation. (Doc. 46; *see also* Doc. 60, p. 2 ("By [June 2018] Stellar had ceased operations, terminated all its employees, closed its offices, and formally dissolved with the State of Florida Department of Corporations."); Doc. 62, pp. 1-2). Mr. Williams asked the Court for leave to amend his complaint to add Mr. Schanck as a defendant. (Doc. 49). The Court granted Mr. Williams's motion. (Doc. 50).

Mr. Williams alleges that Mr. Schanck was the founder and sole owner of Stellar Recovery, Inc. (Doc. 49-1, ¶ 3). Mr. Williams asserts that Mr. Schanck "guide[d], overs[aw], and ratifie[d] all operational decisions of Defendant Stellar." (Doc. 49-1, ¶ 18). Throughout his complaint, Mr. Williams contends that Stellar acted "on behalf of Defendant Schanck." (Doc. 49-1, ¶¶ 34-35, 38-42, 44-45, 48, 51-54). Mr. Williams asserts that Mr. Schanck is liable for violations of the TCPA (Count I and Count IV); negligent, reckless, wanton, malicious and/or intentional conduct (Count II); and negligent hiring, training, and/or supervision of employees and/or agents (Count III). (Doc. 49-1, pp. 7-11).

In December of 2018, Mr. Williams served Mr. Schanck by personal service in Vancouver, British Columbia. (Docs. 57-1, 57-2). Mr. Schanck then filed a

motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6). (Doc. 60). Mr. Schanck did not file evidence in support of his motion to dismiss for lack of personal jurisdiction. Mr. Schanck is representing himself in this matter.

### III. ANALYSIS

#### A. Personal Jurisdiction

The Court employs a two-part inquiry to determine whether it has personal jurisdiction over Mr. Schanck. The Court examines whether Alabama's long-arm statute authorizes an exercise of personal jurisdiction over Mr. Schanck, and if so, whether that exercise of jurisdiction over Mr. Schanck would violate the Due Process Clause of the United States Constitution. *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1350.[1] In Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing ALA. R. CIV. P. 4.2(b)); *see also Ex parte Edgetech I.G., Inc.*, 159 So. 3d 626, 633 (Ala. 2014). Therefore, the Court must consider only the limits of

---

[1] The TCPA does not address service of process for private actions. 47 U.S.C. § 227(e)(6)(E)(ii). "[F]or TCPA actions brought by State Attorneys General, or 'an[other] official or agency designated by a State,' … Congress specifically addressed venue, service of process, and potential conflicts between federal and state enforcement efforts. No similar prescriptions appear in the section on private actions…." *Mims v. Arrow Fin. Servs. LLC*, 565 U.S. 368, 381 n.11 (2012) (internal citations to 47 U.S.C.A. § 227(g)(1) omitted). Therefore, the Court must look to state law to resolve Mr. Schanck's argument concerning personal jurisdiction. *See* Fed. R. Civ. P. 4(e).

the Due Process Clause on its exercise of jurisdiction over Mr. Schanck. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

To comply with the requirements of due process, a district court may exercise jurisdiction over a defendant if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).[2] There are two types of personal jurisdiction – general jurisdiction and specific jurisdiction. The parties agree that Mr. Schanck is not subject to general personal jurisdiction in Alabama. (Doc. 60, pp. 6-7; Doc. 63, pp. 2-3). Therefore, the Court must determine whether Mr. Schanck's contacts with Alabama satisfy specific jurisdiction.

Specific jurisdiction enables a district court to hear a claim against a nonresident defendant when the defendant's contacts with the forum state give rise to the action before the court. A district court examining specific jurisdiction must evaluate the nature of the defendant's contacts with the state, the nature of the conduct at issue, the extent to which the conduct at issue impacted the forum state

---

[2] Personal jurisdiction is a waivable affirmative defense. If a defendant does not challenge personal jurisdiction, a court does not have to examine the issue *sua sponte*. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701-03 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.").

7

generally, and the extent to which the conduct at issue directly injured citizens of the forum state. *Sloss Indus. Corp.*, 488 F.3d at 925.

The following allegations concern Mr. Schanck's contacts with the state of Alabama. Mr. Williams alleges that he resides in the Northern District of Alabama in Madison County and that a substantial portion of the facts and circumstances that give rise to his claims – namely Stellar's unauthorized auto-dialer collection calls to his cell phone – occurred in this district. Mr. Williams asserts that Mr. Schanck "guide[d], overs[aw], and ratifie[d] all operational decisions of Defendant Stellar" and knew of "the violations of the TCPA alleged" in the complaint "and agreed to and ratified such actions of his company." (Doc. 49-1, ¶¶ 18-19). Mr. Williams alleges that Stellar's conduct was "on behalf of Defendant Schanck." Thus, Mr. Williams alleges that Mr. Schanck is responsible for the calls that Stellar allegedly made to his (Mr. Williams's) cell phone in this district in purported violation of the TCPA. Mr. Williams asserts that Stellar placed calls "at all hours of the day and night" and "repeatedly violated the TCPA by the calls" causing him to suffer, for example, "emotional distress, fear, frustration, upset, humiliation, [and] embarrassment." (Doc. 49-1, ¶¶ 41, 44, 45). These allegations of injury to an Alabama resident prompted by TCPA violations in this district for which Mr. Schanck allegedly is responsible suffice to preliminarily establish jurisdiction over Mr. Schanck in this district. *See Woods v. Santander Consumer USA, Inc.*, No. 2:14-

CV-02104-MHH, 2016 WL 3124618, at *4 (N.D. Ala. June 3, 2016) (explaining that Santander was subject to personal jurisdiction in Alabama because "[e]very time a borrower has received a call in Alabama on a cell phone, regardless of the area code, Santander has purposefully and deliberately entered Alabama … [and] must reasonably anticipate having to defend TCPA claims under § 227(b)(1)(A)(iii) in this forum").

Mr. Schanck does not challenge the factual allegations concerning his ownership interest in Stellar or his managerial control over the company. Rather, he contends that the corporate shield doctrine precludes the Court's exercise of jurisdiction over him. Generally speaking, it is true that a "court may not exercise personal jurisdiction over [corporate officers] as individuals for actions taken in Alabama in their corporate capacity." *South Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1260 (M.D. Ala. 2004). But courts have held that the express language of the TCPA allows actions against corporate officers who authorize TCPA violations.

For example, in *Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011), the district court recognized the corporate shield doctrine but held that the "any person" language in the TCPA authorizes suits against corporate officers. 787 F. Supp. 2d at 415-17. The TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227 (b)(1). The *Universal Elections* court explained:

> The "any person" language of § 227(d), however, plainly applies to individuals; the section does not impose liability only on entities. Moreover, courts that have addressed the issue have concluded that individuals acting on behalf of a corporation may be held personally liable for violations of § 227(d) if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Texas v. Am. Blastfax,* 164 F.Supp.2d 892, 898 (W.D. Tex. 2001); *see also Baltimore–Washington Tel. Co. v. Hot Leads Co.,* 584 F.Supp.2d 736, 745 (D. Md.2008) (observing that if the defendants, who were the same defendants as in *American Blastfax* and in both cases were sued for sending unsolicited faxes, "actually committed the conduct that violated the TCPA, and/or ... actively oversaw and directed the conduct," they could be held individually liable for the statutory violations); *Covington & Burling v. Int'l Mktg. & Research, Inc.,* 2003 WL 21384825, *6 (D.C. Super. Ct. 2003) (holding that corporate executives were personally liable because they "set company policies and over[saw] day-to-day operations" and were "clearly involved in the business practices" that violated the TCPA).

787 F. Supp. 2d at 415-16 (footnote omitted); *see also Physicians Healthsource, Inc. v. A-S Medication Sols. LLC*, 324 F. Supp. 3d 973, 983 (N.D. Ill. 2018); *A Custom*

*Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2017 WL 2619144, at *9 (N.D. Ill. June 16, 2017).[3]

Mr. Williams has alleged just that – that Mr. Schanck directed and authorized the alleged TCPA violations that purportedly occurred in this district. (Doc. 49-1, ¶¶ 18-19). On the record before it, the Court must accept Mr. Williams's allegations as true. Therefore, on the current record, the Court finds that it may exercise personal jurisdiction over Mr. Schanck without violating traditional notions of fair play and substantial justice.[4] The Court denies Mr. Schanck's motion to dismiss under Rule 12(b)(2).

---

[3] Courts have held that a corporate officer's mere knowledge of TCPA violations is not sufficient to give rise to personal liability under the TCPA. *Physicians Healthsource, Inc.*, 324 F. Supp. 3d at 983 ("[d]irect participation or authorization" is required to establish personal jurisdiction). In the cases in which courts have held that corporate officers may be liable for TCPA violations, the officers took some affirmative action. *See e.g. Physicians Healthsource, Inc.*, 324 F. Supp. 3d at 983 (corporate officer told marketing agent what to write in the fax and approved its sending); *Am. Blastfax, Inc.*, 164 F. Supp. 2d at 898 (officers were the "guiding spirits" and "central figures" behind TCPA violations); *cf. Savanna Grp. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 4734004, at *8 (N.D. Ill. Sept. 3, 2013) (no personal liability where corporate officer merely signed a check); *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-CIV-SCOLA, 2013 WL 1283885, at *4 (S.D. Fla. Mar. 27, 2013) (granting summary judgment for the defendant because there was "no evidence" that corporate officer had "anything personally to do with the calls made to Plaintiff").

[4] The Court may exercise personal jurisdiction over Mr. Williams's state law claims. The Court has pendent personal jurisdiction over all related claims that arise out of a common nucleus of operative facts. *See Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F.Supp.2d 1213, 1224 n. 3 (S.D. Fla. 2009) (citing *Cincinnati Ins. Co. v. Belkin Corp.*, No. 07–0615–WS–C, 2008 WL 4949783, at *16 (S.D. Ala. Nov. 14, 2008) (in turn citing *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004), and the Second, Third, Fourth, Seventh, Tenth and D.C. Circuit decisions discussed therein); *see also Cronin v. Washington Nat. Ins. Co.*, 980 F.2d 663, 671 (11th Cir. 1993) (district court properly exercised personal jurisdiction over all claims arising "from the same jurisdiction generating event"). Mr. Williams's state law claims arise out of the same operative facts, namely Mr. Schanck's purported supervisory role in the alleged use of an autodialer and/or predictive dialer to repeatedly call and leave prerecorded

## B. Failure to State a Claim

### 1. TCPA Violation Under 47 U.S.C. § 227 (Counts I and IV)

Mr. Schanck asserts that the TCPA's four-year statute of limitations bars Mr. Williams's claims. (Doc. 60, pp. 9-10). Stellar's calls to Mr. Williams began in April 2014. (Doc. 49-1, ¶ 9). Mr. Williams added Mr. Schanck as a defendant in June 2018. (Doc. 50). On this basis, Mr. Schanck contends that Mr. Williams's claims are time-barred. (Doc. 60, p. 9).

Mr. Schanck's argument fails if the TCPA claims in Mr. Williams's amended complaint relate back to his original complaint. FED. R. CIV. P. 15(c); *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010). For a claim in an amended complaint against a new defendant to relate back to the original complaint, the claim against the new defendant must "'[arise] out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" *Cox v. Ferrell*, 262 Fed. Appx. 147, 149 (11th Cir. 2008) (quoting *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) (in turn quoting FED. R. CIV. P. 15(c)(2)). In addition, "within the period provided by Rule 4(m) for serving the summons complaint," the newly named defendant must have "received such notice of the action that it will not be prejudiced in defending on the merits." FED. R. CIV. P. 15(c)(1)(C)(i). Finally, "the

---

messages on Mr. Williams's cell phone without Mr. Williams's prior express consent. (Doc. 49-1, ¶¶ 18-25).

party to be brought in by amendment… knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(ii). Mr. Schanck limits his argument to the third condition.

According to the United States Supreme Court, "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski*, 560 U.S. at 548. Therefore, the issue is not whether Mr. Williams knew or should have known Mr. Schanck's identity, but rather whether Mr. Schanck himself knew or should have known that he would be named as a defendant "but for an error." *Krupski*, 560 U.S. at 548; *see also Lindley v. City of Birmingham, Ala.*, 515 Fed. Appx. 813, 816 (11th Cir. 2013) (internal citation omitted) (affirming that "the pertinent question is whether within the Rule 4(m) period the defendant knew or should have known that it would have been named as a defendant but for an error").

Mr. Schanck asserts that "it is clear in this case that Plaintiff knew of Defendant Schanck and his status within the company and still only chose to initially sue Defendant Stellar…." (Doc. 60, pp. 11-12). However, during the June 14, 2018 teleconference on the record, Mr. Williams explained that he did not – and still does not fully – know of Mr. Schanck's involvement. Mr. Williams asked for an

13

opportunity to conduct discovery about a possible veil piercing theory of liability. Yet even if Mr. Williams had known of Mr. Schanck and made a deliberate choice to only sue Stellar, "[t]hat kind of deliberate but mistaken choice does not foreclose a finding that Rule 15 (c)(1)(C)(ii) has been satisfied." *Krupski*, 560 U.S. at 549. "[A] plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression." *Krupski*, 560 U.S. at 549. If Mr. Williams's contentions about Mr. Schanck's involvement with Stellar prove correct, then Mr. Schanck reasonably should have known that he would be named a defendant but for an error. Therefore, the Court denies Mr. Schanck's motion to dismiss the TCPA claims against him.

## 2. State Law Claims (Counts II and III)

Mr. Schanck argues that the Court should dismiss Mr. Williams's negligence claim for failure to set forth an allegation of negligence distinct from a TCPA violation. (Doc. 60, p. 13). The Court is not persuaded. Breach of a statute may supply the basis for a negligence claim under Alabama law. *See Dickinson v. Land Developers Const. Co.*, 882 So. 2d 291, 302 (Ala. 2003).

Mr. Williams also asserts a claim for negligent hiring, training, and/or supervision of employees and/or agents. (Doc. 49-1, pp. 9-10). Claims of this sort are based on the alleged tortious conduct by an employee. *Thrasher v. Ivan Leonard*

14

*Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2001). Mr. Williams has not alleged tortious conduct by Stellar employees. Instead, he alleges that he received calls via an autodialer or predictive dialer. (See, *e.g.*, Doc. 49-1, pp. 4-6). Mr. Williams alleges generally that Stellar and Mr. Schanck hired, retained, or supervised "incompetent personnel" who Stellar and Mr. Schanck either allowed or encouraged to violate the TCPA. These allegations are too vague to support a claim against Mr. Schanck for negligent hiring, retention, and supervision. The Court will dismiss that claim without prejudice.

## IV. CONCLUSION

For the reasons explained above, the Court denies Mr. Schanck's motion to dismiss as to Mr. Williams's TCPA and negligence claims. The Court dismisses Mr. Williams's negligent supervision claim without prejudice.

**DONE** and **ORDERED** this September 6, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE