UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ERIC K. WILLIAMS, | } |
| | } |
| | } |
| PLAINTIFF, | } |
| | } |
| | } |
| | } |
| v. | }   Case No.:  5:15-cv-01434-MHH |
| | } |
| | } |
| JOHN SCHANCK | |
| | |
| DEFENDANT. | |

## MEMORANDUM OPINION AND ORDER

Several motions are pending before the Court in this TCPA action. Among them is Mr. Schanck's motion for judgment on the pleadings or for summary judgment. (Doc. 86). Citing *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020), Mr. Schanck argues that Mr. Williams's TCPA claim fails as a matter of law because Mr. Williams has not alleged, and there is no evidence to prove, that "Stellar dialed numbers that were randomly generated, nor that the equipment used had the capacity to do so." (Doc. 86, p. 1). The Court will examine

1

Mr. Schanck's motion first because if the motion is well-taken, then a ruling in his favor will make the other pending motions moot.

To evaluate Mr. Schanck's motion as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, the Court accepts as true the facts that Mr. Williams has alleged in his amended complaint and views those alleged facts in the light most favorable to Mr. Williams. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez*, 774 F.3d at 1335 (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)) (internal marks omitted).

In his second amended complaint, Mr. Williams alleges that Stellar and Mr. Schanck violated the TCPA because Stellar "illegally used an autodialer to call [his] cell phone," a "predictive dialer to call [his] wireless numbers," and "pre-recorded calls to call [his] wireless number" without his permission to try to collect a debt that he allegedly owed to Dish Network. (Doc. 49-1, ¶¶ 9, 21–23). Mr. Williams also alleges that Stellar "continually harassed [him] with pre-recorded calls to [his] cell phone without having consent to call his cell number," that Stellar's contacts with his cell phone "occurred via 'automatic telephone dialing system' as defined by 47 U.S.C. § 227(a)(1)," and that Stellar placed calls to his "cellular telephone via the

automatic telephone dialing system [that] used 'an artificial or prerecorded voice' as described in 47 U.S.C. § 227(b)(1)(A).'' (Doc. 49-1, ¶¶ 24, 28, 29).

The TCPA "generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Assoc. of Political Consultants, Inc.*, 140 S.Ct. 2335, 2343 (2020). Congress enacted the TCPA because "telemarketers were using equipment that could automatically dial a telephone number and deliver an artificial or prerecorded voice message." *Barr*, 140 S.Ct. at 2344. As Mr. Williams's allegations indicate, the TCPA imposes several different "restrictions on the use of automated telephone equipment," including prohibitions on the use of auto-dialer equipment and the use of prerecorded voice calls. *Barr*, 140 S.Ct. at 2344; 47 U.S.C. § 227 (b)(1)(A) & (B). The TCPA's prohibition regarding auto-dialers was before the Eleventh Circuit in *Glasser*, but the TCPA's restriction on prerecorded voice calls was not. *Glasser*, 948 F.3d at 1305.

In *Glasser*, the Eleventh Circuit discussed the TCPA's definition of "automatic telephone dialing system." 948 F.3d at 1306. Among other things, an "automatic telephone dialing system" must use "a random or sequential number generator." 47 U.S.C. § 227 (a)(1). A system qualifies as an autodialer if it uses "a random or sequential number generator" to "produce" numbers or to "store" numbers. *Glasser*, 948 F.3d at 1306. Mr. Schanck argues that Mr. Williams "does not allege, nor is there any evidence to support, that Stellar dialed numbers that were

3

randomly generated, nor that the equipment used had the capacity to do so." (Doc. 86, p. 1).

From a pleading perspective, it is true that Mr. Williams has not alleged the specific operational characteristics of the auto-dialer that he contends Stellar used, but nothing in the *Glasser* decision suggests that Mr. Williams had to plead those details. Rule 8 of the Federal Rules of Civil Procedure establishes the threshold for complaints, and the rule requires notice pleading. Under Rule 8(a)(2), a complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy Rule 8, "a complaint does not need detailed factual allegations, but the allegations must be enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). "Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012). The allegations in Mr. Williams's operative complaint are sufficient to give Stellar and

Mr. Schanck notice of the TCPA claims that Mr. Williams makes against them, so Mr. Schanck's challenge to the face of the pleadings fails.

Mr. Schanck's alternative motion for summary judgment fares no better. Under Rule 56, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate a genuine dispute as to a material fact precluding summary judgment, the party opposing summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in the non-moving party's favor. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). Accordingly, the Court views the evidence in the light most favorable to Mr. Williams and will draw reasonable inferences in his favor.

While a defendant generally may move for summary judgment under Rule 56 by arguing that a plaintiff has no evidence to establish an essential element of his claim, Mr. Schanck's effort here hits two snags, one procedural and one substantive.

Procedurally, Mr. Schanck has refused to provide meaningful answers Mr. Williams's discovery requests. (Doc. 81, motion to compel). Those requests include interrogatories and requests for production that elicit evidence about the types of dialing equipment the defendants used. (Doc. 82-1, pp. 2-4, 7-9). The Court ordered Mr. Schanck to respond to those discovery requests, (Doc. 83), but Mr. Schanck has substantially ignored the Court's order, (Doc. 85).[1] Accordingly, Mr. Schanck may not move for summary judgment based on the absence of evidence regarding the telephone dialing system that Stellar used to call Mr. Williams's cell phone in connection with debt collection efforts. FED. R. CIV. P. 37(b).

---

[1] By rule, Mr. Schanck was obligated to respond to Mr. Williams's discovery requests without the Court compelling him to act. *See* FED. R. CIV. P. 26; 33(b)(2) ("The responding party must serve its answers and any objections within 30 days after being served with the interrogatories."). When Mr. Schanck responded to the March 26, 2020 discovery requests on July 15, 2020, he provided contradictory information. In response to Mr. Williams's requests for admissions, Mr. Schanck acknowledged that, "at some point," he "was the Chairman of Stellar," but in his interrogatory responses, Mr. Schanck, when asked about each position that he held at Stellar, responded that he "was an investor during the life of Stellar." (Doc. 87, pp. 1, 3). Mr. Schanck did not sign his interrogatory responses or have them notarized. (*Compare* Doc. 38-3, pp. 7-8, Stellar's signed and notarized interrogatory responses). The unsigned responses are invalid and will be stricken from the record if Mr. Schanck does not sign them. FED. R. CIV. P. 26(g)(2), 33(b)(5). If he does sign his interrogatory responses, then he risks sanctions because the record establishes conclusively that Mr. Schanck was the Chairman and Secretary of Stellar Recovery, Inc.

Mr. Schanck dodged Mr. Williams's written discovery questions, generally replying "not my job" and "not my role as investor." (Doc. 87). Stellar's 30(b)(6) representative testified that John Schanck was chair of the board of directors of Stellar, and his son, Garrett Schanck, was the chief executive officer of Stellar. (Doc. 43-1, p. 8, tp. 26). Stellar's Articles of Dissolution establish that Mr. Schanck was Stellar's Chair and Secretary. (Doc. 49-2, p. 2). The record demonstrates that Mr. Schanck was involved in the operations of Stellar. (Docs. 62, 62-1, 62-2). Mr. Schanck's vague and evasive discovery responses, if verified, may provide grounds for sanctions.

Substantively, the record contradicts Mr. Schanck's assertion that there is no evidence in the record that Stellar used an auto-dialer. At the class certification stage, Stellar's corporate representative testified that Stellar used Right Party Connect and Quick Connect and that each is an automated dialing system. (Doc. 43-1, p. 18, tp. 67). Stellar, in response to Mr. Williams's interrogatories to the company, stated that "30 of the 41 calls to Plaintiff were placed using LiveVox's Human Call Initiator (HCI) system in which a clicker agent manually clicks a dialog box to launch each call . . . ." (Doc. 38-3, p. 4; Doc. 41-3, p. 4). Viewing this evidence in the light most favorable to Mr. Williams, the Court may infer from the written discovery responses that Stellar made 11 of its 41 calls to Mr. Williams using Right Party Connect or Quick Connect. As discussed below, it appears that Stellar's 30(b)(6) witness testified that 11 calls were made by auto-dialer.[2] This evidence precludes summary judgment for Mr. Schanck on Mr. Williams's auto-dialer claim.

---

[2] Mr. Schanck contends that "[t]he evidence is" that Mr. Williams's cell phone number "was obtained from a scrub vendor." (Doc. 96, p. 1). Evidence in the record substantiates Mr. Schanck's contention that a scrub vendor evaluates the numbers that Stellar receives from its clients to determine whether the number is a landline or a cellular number. (Doc. 38-3, pp. 4, 6; Doc. 43-3, p. 1, tp. 178). The evidence shows that Stellar sent Mr. Williams's phone number to a scrub vendor on April 2, 2014. Later that day, the scrub vendor confirmed that Mr. Williams's number was an available cell number. (Doc. 91-1, p. 1; *see also* Doc. 41-3, p. 5). Stellar's calls to Mr. Williams's cell phone began after Stellar received that confirmation. (Doc. 91-1).

But none of that information rules out Stellar's use of auto-dialing systems. For example, if Stellar stores cell numbers received from a scrub vendor using a random or sequential number generator and later retrieves those numbers (*i.e.*, produces those calls from storage) to contact purported debtors, then Stellar's equipment may qualify as an automated dialing system under the TCPA. Stellar's 30(b)(6) witness, the witness charged with being familiar with the company's operations, testified that Stellar used an auto-dialer for 11 of the calls that Stellar made to Mr. Williams. That

More importantly, even if Mr. Schanck were correct and there was no evidence in the record to support Mr. Williams's auto-dialer claim, this action would not conclude because in his summary judgment motion, Mr. Schanck did not challenge Mr. Williams's separate claim that Stellar used prerecorded messages when it called him.  (Doc. 49-1, p. 5, ¶ 33).  Stellar's 30(b)(6) corporate representative testified that on at least five occasions in April 2014, Stellar left prerecorded messages for Mr. Williams.  (Doc. 43-3, pp. 15-16, tpp. 241-42).  So, Mr. Schanck is not entitled to summary judgment on Mr. Williams's prerecorded voice claim.

In his motion, Mr. Schanck argues that he cannot be held liable personally for TCPA violations that Stellar may have committed.  (Doc. 86, p. 1).  Mr. Schanck relies on a federal district court opinion from the District of New Jersey to argue that "[t]he owner of a company had to have personally actually committed the conduct, such as setting up the dialing system and designing the system to function unlawfully."  (Doc. 86) (citing *Zelma v. Penn LLC*, 2020 WL 278763 (D.N.J. Jan. 17, 2020)).

---

testimony pre-dated the *Glasser* opinion, so there was no discussion in the 30(b)(6) deposition about the details of the auto-dialer operating system.  As noted, Mr. Schanck has avoided questions concerning those details in his discovery responses.

The *Zelma* decision is not binding authority in this judicial district, and even if it were, Mr. Schanck misunderstands the New Jersey district court opinion. The opinion states: "[A] corporate officer can be personally liable if he actually committed the conduct that violated the TCPA, and/or [he] actively oversaw and directed the conduct." *Zelma*, 2020 WL 278763, at *4.[3] Mr. Williams alleges that "Mr. Schanck directed and authorized the alleged TCPA violation." (Doc. 65, p. 11);[4] *see Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415–16 (D. Md. 2011) ("[C]ourts that have addressed the issue have concluded that individuals acting on behalf of a corporation may be held personally liable for violations of § 227(d) if they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'") (quoting *Texas v. Am. Blastfax*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001)). Thus, the Court denies Mr. Schanck's motion with respect to his argument that he cannot, as a matter of law, be held liable personally for Stellar's alleged TCPA violations.

---

[3] The New Jersey district court found that the plaintiff's mere assertion that "Plaintiff sues Jaffer Ali individually under the New Jersey Responsible Corporate Officer Doctrine" did not plausibly allege direct personal participation or authorization of unlawful conduct. *Zelma*, 2020 WL 278763, at *4.

[4] As discussed in the memorandum opinion denying Mr. Schanck's motion to dismiss, (Doc. 65), Mr. Williams has alleged that Mr. Schanck "guide[d], overs[aw], and ratifie[d] all operational decisions of [] Stellar," knew of the alleged TCPA violations, "and agreed to and ratified such actions of his company." (Doc. 65, p. 8) (citing Doc. 49-1, ¶¶ 18–19)).

9

Because the Court has denied Mr. Schanck's motion for judgment on the pleadings or summary judgment, Mr. Williams's motions to strike Mr. Schanck's motion are moot. (Docs. 89, 93).

That leaves Mr. Williams's motion to strike Mr. Schanck's belated attempt to respond to Mr. Williams's requests for admissions and Mr. Williams's motion for summary judgment. (Docs. 88, 92). Mr. Schanck's responses to the requests for admissions initially were due on June 5, 2020. By order, the Court advised Mr. Schanck of that due date. (Doc. 80).[5] Weeks later, on June 18, 2020 order, the Court instructed Mr. Schanck to respond to Mr. Williams's discovery requests by July 1, 2020 and advised Mr. Schanck that if he did not respond by July 1, 2020, then the Court would "deem Mr. Williams's requests for admissions admitted." (Doc. 83. P. 1). The Court mailed this order to Mr. Schanck on June 18, 2020. (June 18, 2020 docket order). When Mr. Schanck did not respond to Mr. Williams's requests for

---

[5] On May 29, 2020, Mr. Williams filed two motions based on Mr. Schanck's alleged failure to respond to discovery requests. (Docs. 78 and 79). The record demonstrates that Mr. Williams served his requests for admission on Mr. Schanck on March 26, 2020. (Doc. 78-1, pp. 9-11). In an order dated June 2, 2020, the Court explained that Mr. Schanck's responses to the requests were not due until June 5, 2020 because the Court had stayed discovery by general order in response to the COVID-19 pandemic. (Doc. 80; *see also* Docs. 76, 77). The Court mailed that order to Mr. Schanck on June 2, 2020. (June 2, 2020 docket entry). By June 15, 2020, Mr. Schanck still had not responded to the discovery requests, so Mr. Williams refiled his motion to compel and his motion to deem his requests for admissions admitted. (Docs. 81 and 82).

admissions by July 1, 2020, the Court granted Mr. Williams's motion to deem the requests admitted. (Doc. 85).

Under Rule 36 of the Federal Rules of Civil Procedure, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party . . . ." FED. R. CIV. P. 36(a)(3). After a party admits a matter, the matter is "conclusively established" unless the party who failed to respond moves to be permitted to withdraw the admission, and the Court determines that withdrawal "would promote the presentation of the merits of the action" and not "prejudice the requesting party in maintaining or defending the action on the merits." FED. R. CIV. P. 36(b).

Rather than filing a motion for permission to withdraw his admissions, on July 15, 2020, Mr. Schanck filed a "notice of responding requests for admissions." (Doc. 87). In the submission, Mr. Schanck stated that he did not receive the June 18, 2020 order requiring him to respond to Mr. Williams's discovery requests until July 8, 2020. (Doc. 87, p. 1). That overlooks the fact that the responses initially were due

by June 5, 2020, by court order. If Mr. Schanck wishes to ask the Court to withdraw his admissions, he must file a motion pursuant to Rule 36.[6]

The Court directs Mr. Schanck to email chambers at Haikala_chambers@alnd.uscourts.gov to provide his email address to the Court and to counsel for Mr. Williams. The Court will not place the email address on the record but will email all orders to Mr. Schanck. The Court also will mail paper copies of orders to Mr. Schanck at the most recent address he has provided.

As to Mr. Williams's motion for summary judgment, the motion appears well-taken. Mr. Williams has placed in the record Stellar's "History of Account" for his cell number. (Doc. 91-1, pp. 1-8). He also has offered deposition excerpts that seem to be pages from Stellar's 30(b)(6) deposition. (Docs. 92-1 through 91-4). If that is so, then the deposition testimony and the account record establish that Stellar used an auto-dialing system to call Mr. Williams, and Stellar left recorded voice messages on his cell phone. (*See*, *e.g.*, Doc. 43-2, p. 4, tpp. 118-20). The evidence in the record also establishes that Mr. Williams did not consent to the calls. (Doc. 38-3, p. 6; Doc. 43-2, p. 9, tp. 140). To clarify the record with respect to this evidence of Stellar's TCPA violations, the Court sets this matter for a telephone status

---

[6] Were it not for Mr. Schanck's history of evasiveness and his consistent skirting of the rules that govern this action, the Court might deem Mr. Schanck's notice a motion to withdraw. Mr. Schanck has not earned that privilege because of his conduct in this litigation.

conference at 1:00 p.m. CST on Monday, March 1, 2021. Mr. Schanck and counsel for Mr. Williams shall please dial (877) 873-8018 and enter access code 5313999 to participate in the conference.

If the Court is satisfied that Mr. Williams has established TCPA violations, then, based on Mr. Schanck's current admissions, (Doc. 87, p. 11), the Court may impose a judgment against Mr. Schanck for Stellar's TCPA violations. Additional evidence concerning Mr. Schanck's role in Stellar, and, consequently, his responsibility for the company's TCPA violations, includes evidence that Mr. Schanck was the sole owner of Stellar Recovery, (Doc. 49-3, pp. 1-2), and the Chair and Secretary of the company who guaranteed the debts of the company, *see* footnote 1.

The Court directs the Clerk to please term Docs. 86, 88, 89, and 93 and to please mail a copy of this order to Mr. Schanck at his address of record.

**DONE** and **ORDERED** this January 29, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE