# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| ERIC K. WILLIAMS, | } |
| PLAINTIFF, | } |
| v. | } Case No.: 5:15-cv-01434-MHH |
| JOHN G. SCHANCK | } |
| DEFENDANT. | |

## MEMORANDUM OPINION AND ORDER

This opinion is the most recent chapter in this long-running Telephone Consumer Protection Act case. Mr. Williams has moved for summary judgment on his individual TCPA claims. (Doc. 92). For the reasons explained below, the Court decertifies the plaintiff class and grants Mr. Williams's summary judgment motion.

## I.

In June 2018, the Court granted Eric Williams's motion to certify a plaintiff class under Federal Rule of Civil Procedure 23(b)(2). (Doc. 47, p. 17). The Court defined the certified class as:

1

> All individuals or entities within the United States who received autodialed or prerecorded collection calls from Stellar relating to a Dish Network account on a cellular phone number between April 10, 2011 and April 10, 2014, and who did not provide consent – either to Stellar expressly or to Dish Network by providing a cellular number – to receive autodialed or prerecorded calls on a cellular telephone number.

(Doc. 47, p. 17).

The class claims against Stellar included a claim for autodialed calls to a cellular phone number without prior consent under 47 U.S.C. § 227(b)(1)(A)(iii), a claim for artificial or prerecorded voice calls to a cellular phone number without consent under 47 U.S.C. § 227(b)(1)(A)(iii), and a claim to enjoin both types of TCPA violations under 47 U.S.C. § 227(b)(3)(A). (Doc. 47, p. 17).

The request for injunctive relief is moot now because Stellar has dissolved and no longer operates. (*See* 06/14/2018 minute entry; Doc. 49-2, p. 2). During the March 1, 2021 telephone conference in this matter, Mr. Williams acknowledged that injunctive relief no longer is necessary.

Though the Court certified a plaintiff class several years ago, class counsel has not sent notice to the class members. Mr. Williams has not taken steps to advance his class claims since the Court certified the plaintiff class in 2018. During the March 1, 2021 telephone conference in this matter, class counsel did not object to an order dissolving the plaintiff class.

Accordingly, the Court dissolves the plaintiff class and turns its attention to Mr. Williams's individual TCPA claims against Mr. Schanck.

## II.

Mr. Williams has moved for judgment in his favor on his TCPA claims against Mr. Schanck. (Doc. 92). Under Federal Rule of Civil Procedure 56, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate a genuine dispute as to a material fact precluding summary judgment, the party opposing summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). When considering a motion for summary judgment, a district court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in the non-moving party's favor. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). Accordingly, the Court will view the TCPA evidence in the light most favorable to Mr. Schanck and will draw reasonable inferences in his favor.

The TCPA "makes it illegal to 'make any call … using any automatic telephone dialing system or an artificial or prerecorded voice' to 'emergency telephone line[s],' to 'guest room[s] or patient room[s] of a hospital,' or 'to any telephone number assigned to a paging service[] or cellular telephone device' without the 'prior express consent of the called party.'" *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1305 (11th Cir. 2020) (quoting 47 U.S.C. § 227(b)(1)(A)) (alterations in *Glasser*); *see Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167, 1173 (2021) ("The Telephone Consumer Protection Act of 1991 (TCPA) proscribes abusive telemarketing practices by, among other things, imposing restrictions on making calls with an "automatic telephone dialing system." . . . The statute separately prohibits calls using "an artificial or prerecorded voice" to various types of phone lines, including home phones and cell phones, unless an exception applies.") (quoting 47 U.S.C. § 227(a)(1) and 47 U.S.C. § 227(b)(1)(A) and (B)). Accordingly, "to state a claim for a violation of the TCPA, a plaintiff must set forth sufficient facts supporting that: (1) a call was made to a cell or wireless phone, (2) by the use of an automatic dialing system <u>or</u> an artificial or prerecorded voice, and (3) without prior consent of the called party." *Getz v. DIRECTV, LLC*, 359 F. Supp. 3d 1222, 1230 (S.D. Fla. 2019) (emphasis in original); *Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1043 (9th Cir. 2012). Mr. Williams

alleges that Stellar used an automatic telephone dialing system (ATDS) and left him prerecorded voice messages on his cell phone without his consent.

In support of his motion for summary judgment, Mr. Williams relies on the deposition testimony of Stellar's 30(b)(6) corporate representative, Kendra Vallarelli, and on Mr. Schanck's admissions.[1] That evidence establishes that Stellar placed calls to Mr. Williams's cell phone. (Doc. 43-2, p. 4, tp. 119) ("Q: Now, having reviewed the documents, will you agree with me that [redacted] is Mr. Williams' cellphone? A: That's my understanding, yes."); *see also* (Doc. 82-1, p. 9) (Mr. Schanck's admission that Stellar called Mr. Williams's cell phone). The evidence also establishes that Mr. Williams did not consent to Stellar's calls. (Doc. 43-2, p. 9, tp. 140) ("Q: When you said there's not consent, so Stellar admits that Mr. Williams never gave them consent to call him on any of his numbers, did he?

---

[1] In its January 29, 2021 memorandum opinion, the Court granted Mr. Williams's motion to deem Mr. Schanck's admissions admitted. (Doc. 97, p. 10 n.5; *see* Doc. 85). The Court explained that Mr. Schanck could ask to withdraw his admissions, but to do so, he would have to file a motion consistent with Federal Rule of Civil Procedure 36. (Doc. 97, pp. 11–12). Mr. Schanck has not filed a Rule 36 motion. Instead, he filed a motion to stay. (Doc. 98). The Court notes that since 2019, Mr. Schanck has filed numerous motions and documents, including his answer (Doc. 66), his answer and affirmative defenses (Doc. 67), a motion for extension of time to find counsel (Doc. 73), a motion for judgment on the pleadings and motion for summary judgment (Doc. 86), a "notice of responding requests for admissions" (Doc. 87), a notice of supplemental authority (Doc. 90), and a response in opposition to Mr. Williams's motion for summary judgment (Doc. 96). Mr. Schanck has proven able to participate effectively in the litigation process. Yet, he has not availed himself of the opportunity to file a Rule 36 motion to withdraw his admissions.

A: That's my understanding, yes."); *see also* (Doc. 82-1, p. 9) (Mr. Schanck's admission that Mr. Williams did not give Stellar permission to call his cell phone).

The evidence shows that Stellar used an ATDS and left pre-recorded messages when the company called Mr. Williams's cell phone. Ms. Vallarelli testified that Stellar used LiveVox as its "dialing technology" system, and LiveVox offered two styles of dialing: RPC and QC. (Doc. 43-1, p. 7, tpp. 22, 24).[2] She explained that "RPC, upon the outbound telephone call, will ask the person we're calling to follow some steps of verification before connecting it to an agent. QC makes the telephone call connect and transfer to an agent." (Doc. 43-1, p. 18, tpp. 67–68). She testified that RPC and QC are ATDS devices. (Doc. 43-1, p. 18, tp. 67); *see also* (Doc. 82-1, p. 9) (Mr. Schanck's admission that Stellar's telephone system was capable of automatically dialing telephone numbers).

Stellar's records show that it placed six calls to Mr. Williams using the RPC LiveVox system. (Doc. 9-1, pp. 2–4). These calls were placed at: 11:41 a.m. on April 2, 2014; 8:30 a.m. on April 5, 2014; 7:54 a.m. on April 8, 2014; 12:53 p.m. on April 8, 2014; 10:14 a.m. on April 10, 2014; and 5:44 p.m. on April 10, 2014. (Doc.91-1, pp. 2–4). With respect to prerecorded messages, Ms. Vallerelli admitted that Stellar left Mr. Williams prerecorded messages on April 2, 2014 at 7:05 p.m.;

---

[2] RPC stands for "Right Party Connect," and QC stands for "Quick Connect." (Doc. 43-1, p. 18, tp. 67).

April 3, 2014 at 11:21 a.m.; April 4, 2014 at 8:34 a.m.; April 7, 2014 at 12:28 p.m.; and April 9, 2014 at 11:19 a.m. (Doc. 43-3, pp. 15–16, tpp. 241–42).[3] Stellar intended to make those calls and intended to call Mr. Williams when it left the pre-recorded messages on his voicemail. (Doc. 43-3, p. 16, tp. 243).

In response to Mr. Williams's motion for summary judgment, Mr. Schanck makes three arguments:

> Plaintiff has not overcome my affirmative defenses filed Oct 2, 2019.
>
> Plaintiff has no proof that I can be personally liable for alleged TCPA violations and I recently filed cases on this topic.
>
> Plaintiff has no proof the dialer is an automatic telephone dialing system as defined in the 11th circuit. There is no proof or even allegation the number dialed was randomly generated. IN [*sic*] fact, it is the opposite. The evidence is the number was obtained from a scrub vendor.

(Doc. 96, p. 1).

---

[3] The Court notes that the times identified in the deposition do not align perfectly with the times on Stellar's call sheet, but this does not create a genuine dispute of material fact. The timing of the calls is not material. Whether the calls were made at 3:00 a.m. or 3:00 p.m., a prerecorded call violates the statute. Ms. Vallarelli admitted that each call was a prerecorded call, so Stellar is liable for those calls.

Additionally, the timing of the calls reflected on Stellar's call sheet are a close approximation of the times in the deposition. For example, Ms. Vallarelli testified that there was a prerecorded call on April 4, 2014 at 8:34 a.m. local time (7:34 a.m. CST). (Doc. 43-3, p. 16, tp. 242). The call sheet reflects a call at 7:33 a.m. on April 4, 2014, off by one minute. (Doc. 91-1, p. 2). Each of the five prerecorded calls listed on Stellar's sheet is off by one minute from the deposition testimony. These discrepancies do not preclude summary judgment.

As to Mr. Schanck's final point, as noted, Stellar's 30(b)(6) corporate representative stated that Stellar used an ATDS, and Mr. Schanck admitted as much. The Eleventh Circuit Court of Appeals recently noted that "[t]he statute . . . applies to devices that have the 'capacity' to identify randomly generated numbers; it does not require that capacity to be used in every covered call." *Glasser*, 948 F.3d at 1312. So, Mr. Williams does not have to prove that Stellar's ATDS identified his cell phone number randomly; he needs to show that only that Stellar's ATDS had the capacity to identify randomly generated numbers. Because the evidence establishes that Stellar's LiveVox system, using RPC and QC, was an ATDS, Mr. Williams has demonstrated that Stellar placed calls to his cell phone, using an ATDS for some calls and leaving prerecorded messages during others, and that Stellar did so without his consent.

As to Mr. Schanck's personal liability for Stellar's misconduct, Mr. Williams has not cited, and the Court has not found, binding authority that indicates whether a company officer or director may be held liable personally for his company's TCPA violations. In *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), a TCPA case, the Eleventh Circuit mentioned in a footnote that "[f]or simplicity, and without implying any view as to Mr. Hanna's possible personal liability, throughout this opinion we will refer to both defendants—Mr. Hanna and his law firm—collectively as 'Hanna.'" 936 F.3d at 1165 n.1. Though it did not explicitly endorse personal

liability of company officers in TCPA cases, the Eleventh Circuit did not reject personal liability either.

"[C]ourts that have addressed the issue have concluded that individuals acting on behalf of a corporation may be held personally liable for violations of [the TCPA] if they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 416 (D. Md. 2011) (quoting *Texas v. Am. Blastfax*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001)); *see also Covington & Burling v. Int'l Mktg. & Research, Inc.*, No. Civ.A. 01-0004360, 2013 WL 2138425, at *6 (D.C. Super. Ct. Apr. 17, 2003) (Corporate officers may be liable for the corporation's acts, and "[a]s the only corporate officers of Fax.Com, [the individual defendants] set company policies and oversee day-to-day operations. Therefore, they are clearly involved in the business practices that led to Covington receiving 1,634 unsolicited faxes in a five day period.").

In *Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936-Civ., 2013 WL 1283885 (S.D. Fla. Mar. 27, 2013), the district court reasoned that for an individual defendant to be held liable for a company's TCPA violation, the plaintiff "would have to show that [he] failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA, or that he authorized or personally engaged in conduct that clearly violated the TCPA." *Mais*, 2013 WL 1283885, at

\*4. Because the plaintiff offered no facts showing the individual defendant's involvement in implementing TCPA-compliant policies or procedures, the district court was "unwilling to find a corporate officer individually liable where he attempted to implement policies that complied with the statute and did not have any direct participation in the allegedly violative conduct, even if the corporation is itself liable. To hold otherwise, would countenance personal liability for corporate officials too easily." *Mais*, 2013 WL 1283885, at \*4. But the district court opined that "officers may be held personally liable when they 'directly participate in or authorize the commission of a wrongful act, even if the act is done on behalf of the corporation[.]'" *Mais*, 2013 WL 1283885, at \*4 n.1 (quoting *Am. Blastfax*, 164 F. Supp. 2d at 898).

Our facts align more closely with the facts in *Covington & Burling* than the facts in *Mais*. Mr. Schanck knew of, approved of, and signed off on Stellar's TCPA practices. (Doc. 82-1, p. 10, ¶¶ 11–13). He was the Chairman and Chief Executive Officer of Stellar. (Doc. 82-1, p. 10, ¶¶ 6–9; *see also* Doc. 43-1, p. 8, tp. 26; Doc. 49-2, p. 2). He was involved in the operations of Stellar, including liquidating its accounts receivable in March 2018 to satisfy a creditor. (Doc. 62, p. 1; Doc. 62-1, p. 1). The evidence does not support Mr. Schanck's claim that he was simply an investor during the life of Stellar. (*See* Doc. 87, pp. 3–4). Rather, the evidence shows that Mr. Schanck oversaw Stellar, including its TCPA practices. Like the

10

defendants in *Covington & Burling*, Mr. Schanck was "clearly involved in the business practices" that led to the TCPA violations.

Because the evidence shows that Mr. Schanck personally oversaw and approved of conduct that violated the TCPA, Mr. Schanck is personally liable for Stellar's TCPA violations. Accordingly, the Court will enter judgment in favor of Mr. Williams and against Mr. Schanck personally as to the 11 calls that violated the TCPA.

## **Conclusion**

For the reasons above, the Court decertifies the plaintiff class and grants Mr. Williams's motion for summary judgment. (Doc. 92). On or before July 2, 2021, Mr. Williams may file a submission addressing the damages he seeks for the 11 TCPA violations that he has established. Mr. Williams should break out his damages evidence into ATDS damages evidence and prerecorded voice message damages evidence.[4]

---

[4] On April 1, 2021, the Supreme Court issued its opinion in *Facebook, Inc. v. Duguid,* 141 S. Ct. 1163 (2021). In that case, the Supreme Court "granted certiorari to resolve a conflict among the Courts of Appeals regarding whether an autodialer must have the capacity to generate random or sequential phone numbers." *Duguid*, 141 S. Ct. at 1168–69. The Supreme Court held that "Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." *Duguid*, 141 S. Ct. at 1170. "[A] necessary feature of an autodialer under [47 U.S.C.] § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." *Duguid*, 141 S. Ct. at 1173. Because Stellar has admitted that its devices are ATDS devices for purposes of the TCPA, and because Mr. Schanck has not

**DONE** and **ORDERED** this June 22, 2021.

_Madeline H. Haikala_
_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

tried to withdraw his admissions since the Court offered the opportunity more than four months ago, the Court will not reopen the autodialer issue in this case. Should an appellate court find error in the autodialer analysis in this case, that error will not impact Stellar's prerecorded voice TCPA violations.